**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**KEITH LOWE,**

**Plaintiff,**

**v.** **Case No. 2:25-cv-000272**

**SUPERINTENDENT JONATHAN FRAME,**
**ACTING COMMISSIONER LANCE YARDLEY,**
**TIMOTHY THISTLETHWAITE, MD,**
**and PSIMED CORRECTIONS, LLC,**

**Defendants.**

**SUPERINTENDENT JONATHAN FRAME AND ACTING COMMISSIONR LANCE YARDLEY'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

The West Virginia Division of Corrections and Rehabilitation ("WVDCR") is committed to providing for the needs of inmates in its custody while maintaining the safety and security of its facilities. Defendants Superintendent Jonathan Frame and Acting Commissioner Lance Yardley, by counsel, Jonathan M. Calhoun, Assistant Attorney General, argue that the WVDCR has acted appropriately in working with Defendant PsiMed, its contracted mental health services provider, to provide for the mental health needs of the Plaintiff while also being mindful of safety and security concerns, as unfortunately the Plaintiff has a long history of escape attempts and disciplinary violations which cannot be ignored. The Plaintiff cannot demonstrate that he is entitled to a preliminary injunction, and his requested relief should be denied.

STATEMENT OF THE CASE

**1. Plaintiff's history of escape and disciplinary violations.**

The Plaintiff is serving a life sentence with no possibility of parole, having been convicted of first-degree murder by Kanawha County jury in 2005. Exhibit No. 1. The Plaintiff was subsequently committed to the custody of the Division of Corrections, predecessor agency to the WVDCR, on September 27, 2005. Exhibit No. 2.

It would be an understatement to say the Plaintiff has had an unsatisfactory record while incarcerated at the Mt. Olive Correctional Complex ("MOCC"). He has been involved in three major substantiated escape attempts and dozens of disciplinary violations which warrant the continued segregation status of which he now complains.

On or about July 10, 2007, the Plaintiff attempted to escape with another inmate by using weightlifting clips to make a grappling hook and trash bags to make a rope. Exhibit No. 3. Defendant Frame investigated the matter. The Plaintiff pled guilty to escape[1] at his administrative hearing in Docket No. MOC-07-529-G and was given sixty days of punitive segregation and loss of privileges as discipline. *Id*.

The Plaintiff once again attempted to escape MOCC on July 17, 2012. An investigation by Defendant Frame revealed that the Plaintiff and other inmates attempted to escape by propping the MOCC library door open with weight. The Plaintiff, upon being discovered by MOCC personnel and despite being saturated with Oleoresin Capsicum ("OC") spray, jumped over a fence. This was done in defiance of verbal commands by correctional officers and despite the other inmate surrendering, the Plaintiff continued with his escape attempt by jumping a second fence until he ultimately surrendered when confronted by a correctional officer with a

[1] Current definitions of WVDCR disciplinary violations can be found in Policy Directive 325.00, attached as Exhibit No. 23.

firearm. Exhibit No. 4.[2] The Plaintiff pled guilty to escape in MOC-12-0767-G and again received sixty days of punitive segregation and loss of privileges as discipline. Exhibit No. 5. The incident was submitted to the Fayette County Prosecuting Attorney for review, who ultimately elected to not proceed with the prosecution of the matter since the Plaintiff was already serving a life sentence without the possibility of parole. Exhibit No. 6.

The Plaintiff attempted a third escape on September 7, 2020, as detailed in a "Report of Investigation" dated October 7, 2020. Exhibit No. 7.[3] The Plaintiff made a "dummy" to make it appear he was in his bed while he was in the recreation yard using water hose to attempt to escape through a fence. *Id*. at WVDCR 492. The Plaintiff was found guilty of escape in MOCC Docket No. 22775 and given received sixty days of punitive segregation and loss of privileges as discipline. Exhibit No. 8. The Plaintiff appealed the adverse disciplinary decision, and the appeal was denied based upon a finding that the hearing officer substantially complied with institutional standards, was based upon sufficient evidenced, and the sanction imposed was appropriate to the violation. *Id.* at WVDCR 178.

Recently, in addition to the discipline related to his discipline for obtaining a controlled substance related to his suicide attempt, which will be discussed more fully, *infra*, the Plaintiff was charged for theft of property over $100.00 on April 3, 2025. Exhibit No. 9.

Further, in addition to the three major escape attempts detailed above, the Plaintiff was also found guilty of escape on another occasion. On December 8, 2022, the Plaintiff "slipped his

[2] There are voluminous attachments to Exhibit No. 4 which have been excluded for the purposes of the present response.
[3] The report has been submitted without its numerous attachments, which are voluminous and contain sensitive material.

cuffs" and was subsequently found guilty of Escape in Docket No. 256623. Exhibit 10 at WVDCR 230.

The Plaintiff's disciplinary history is substantial, totaling over fifty substantiated incidents going back to 2007. Exhibit No. 10. While the WVDCR defendants do not believe it is necessary to delve into the details of every past disciplinary incident involving the Plaintiff, it is important to convey the scope and duration of the Plaintiff's continual misconduct during his long tenure at MOCC.

**2. Plaintiff's recent suicide attempt and related incidents.**

On April 6, 2025, the Plaintiff attempted suicide, which is detailed in his amended complaint. (ECF No. 10, at 9-10). At approximately 2:45 p.m., Seargent James Pontier noticed the Plaintiff slumped over in his bunk and knocked on his door several times. Exhibit Nos. 11 and 12. Seargent Pontier radioed the tower operator, had the cell opened, and entered to check on the Plaintiff. *Id*. Seargent Pontier and LPN Sarah Kern gave the Plaintiff sternum rubs with no success, and Seargent Pontier administered a burst of Narcan to the Plaintiff with no success. *Id*. Corporal Joseph Roberts administered a second burst of Narcan which caused the Plaintiff to open his eyes and begin speaking. *Id*. LPN Kern administered additional sternum rubs and the Plaintiff was moved to the medical unit. *Id.* Thus, the actions of Correctional Officers and LPN Kern likely saved the Plaintiff's life.

A search of the Plaintiff by correctional officers revealed that he was in possession of a substance that was identified by Licensed Practical Nurse Kristina Minter as Suboxone. The Plaintiff, pursuant to WVDCR policy, was charged with use and possession of drugs and intoxicants because Suboxone is a controlled substance for which he did not have a prescription and was found guilty at an administrative hearing on April 28, 2025, in Docket No. 30260.

Exhibit No. 13.[4] He received discipline in the form of sixty days punitive segregation and loss of privileges, with the exception of library books, phone, and tablet privileges. *Id*.

On April 9, 2025, Correctional Officers Joseph Roberts and Chaz Paris observed the Plaintiff stating that he "…went around the pod trying to at as much of the orange stuff as I could so I could get out of here." Exhibit Nos. 14-17. Correctional Officer Roberts informed the Plaintiff that he could talk to them. Exhibits 14-15. Correctional Officers Roberts and Paris reported the incident to Captain Michael Blagg. Correctional Officers Joseph Roberts and Chaz Paris. Correctional Officer Chaz Paris then spoke with the mental health unit to make them aware of the Plaintiff's statement. Exhibit Nos. 16-17.

On April 28, 2025, Correctional Officer Kaitlin Montgomery heard the Plaintiff, during his aforementioned disciplinary hearing, say "he couldn't do this anymore" and that "he was in a bad way." Exhibit Nos. 18-19. The hearing officer asked the Plaintiff if he wished to speak to mental health, and the Plaintiff declined. *Id*. Correctional Officer Montgomery informed Captain Blagg of the Plaintiff's statements and also informed PsiMed Therapist Katherine Kincaid. *Id*. Thus, the WVDCR has taken care to continue monitoring the mental health of the Plaintiff and report it to the appropriate mental health providers.

**3. Plaintiff's continued placement in segregation.**

The Plaintiff remains in segregation because of his past escape attempts and extensive disciplinary history. The WVDCR Defendants argue that he is maintained consistent with the relevant provisions of WVDCR Policy Directive 326.00, "Segregation Units (Administrative and

[4] The WVDCR defendants assert that this hearing report directly refutes the allegation in paragraph 68 of the amended complaint. (ECF 10, at 12).

Punitive." Exhibit No. 20. Further, he is held consistent with MOCC Operational Procedure 324, "Conditions of Confinement and Quality of Life." Exhibit No. 21.

The Plaintiff is held pursuant to the provision Section III of Operational Procedure 324 as an inmate with a "…high risk of to the security and safety of the facility, other inmates, employees, and the general public…" Exhibit 20, at WVDCR 3670. The Plaintiff is designated "Level Three-D" and may earn privileges in the quality of life program. *Id*.

On February 20, 2025, the MOCC Progressive Reintegration Opportunity Committee recommended that the Plaintiff remain in "Three-D" status, to be reviewed in 90 days. Exhibit No. 22, at WVDCR 3661. Cited as reasons for this decision were the Plaintiff's institutional record, the nature of the write-ups which led to him being placed in segregation, escape history, and need to live in a more secure environment. *Id*.

## ARGUMENT

1. **The Plaintiff cannot meet the standard for a preliminary injunction.**

While the Plaintiff's mental health remains a concern, the WVDCR defendants argue that he cannot meet the standard for a preliminary injunction to issue. Simply, he cannot meet any of the factors necessary to warrant his requested extraordinary relief.

A four-factor test must be satisfied before a preliminary injunction may be issued:

> A party seeking a preliminary injunction must meet the following four-factor test. A moving party must establish the presence of the following: (1) "a clear showing that it will likely succeed on the merits"; (2) "a clear showing that it is likely to be irreparably harmed absent preliminary relief"; (3) the balance of equities tips in favor of the moving party; and (4) a preliminary injunction is in the public interest.

*United States v. South Carolina*, 840 F. Supp. 2d 898, 914 (D.S.C. 2011), *modified in part*, 906 F. Supp. 2d 463 (D.S.C. 2012), *aff'd*, 720 F.3d 518 (4th Cir. 2013).

Further, preliminary injunctions are extraordinary remedies and must be decided in regard for the public interest:

> A preliminary injunction is an extraordinary remedy never awarded as of right. *Munaf,* 553 U.S., at 689 – 690, 128 S.Ct., at 2218–2219. In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S., at 542, 107 S.Ct. 1396. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376–77, 172 L. Ed. 2d 249 (2008)

As discussed in more detail, *infra*, there has not been a clear showing that the Plaintiff will prevail on the merits. Rather, as it pertains to the WVDCR defendants, the Plaintiff has failed to allege facts that even if taken as true would meet the standard of deliberate indifference.

The second factor fails as well. The WVDCR defendants are not insensitive to the mental health needs of the Plaintiff and are committed to work with Defendant PsiMed to ensure he receives appropriate care. However, the Plaintiff himself reports that he is no longer suicidal. (ECF No. 10 at 12). While this statement clearly does not eliminate the need for continued psychological care, the WVDCR argues that the facts on their face demonstrate that the Plaintiff himself states that he is no longer suicidal, reducing the risk of imminent harm. *Id*.

The third and fourth factors are strongly in favor of the WVDCR defendants. The WVDCR is the state agency tasked with the custody of individuals sentenced to prison in West Virginia state courts. *See W. Va. Code § 15A-3-2*. The WVDCR does not dispute that obligation includes ensuring the medical and mental health needs of its inmates are addressed.[5] However,

---

[5] "The commissioner…shall…(s)upervise the treatment, custody, and discipline of all inmates and residents and the maintenance of the institutions and their industries…"

that responsibility also includes securely incarcerating those sentenced to prison by state courts. The balance of equities, in simplest terms, tips in favor of permitting the WVDCR to fulfill its statutory duties by working with Defendant PsiMed to provide for the Plaintiff's mental health needs while also keeping him safely incarcerated for the rest of his natural life, which was the order of Kanawha County Circuit Court after he was convicted of first-degree murder by a jury of his peers and sentenced to life in prison. Exhibit Nos. 1 and 2.

This goes hand in hand with the fourth element of the test; public interest is for the Plaintiff to be safely incarcerated in state prison. It defies the public interest for the Plaintiff to be removed from WVDCR custody and placed at a mental health facility. This would necessarily involve removing the Plaintiff from WVDCR custody and requiring a mental hospital, which is not a secure WVDCR or Bureau of Prisons facility, to bear the responsibility and risk of housing a convicted murderer serving a life sentence who has multiple times attempted to escape from a maximum security prison.

The decision of the Fayette County Prosecuting Attorney to not prosecute the Plaintiff for the 2012 escape incident (see Exhibit No. 6) underlies one of the most significant concerns the WVDCR has concerning public safety: the Plaintiff, because of the murder which causes him to have a life sentence without the possibility of parole, three serious escape attempts, and extensive record of disciplinary violations has put himself in a position where, practically speaking, there is no greater punishment under West Virginia law he can receive above what has already been imposed. If he were placed at Sharpe Hospital or another mental health facility, there is no practical legal deterrent to prevent him from attempting to escape or engaging in other misconduct which would pose a significant danger to facility staff and the public at large. It is

W. Va. Code Ann. § 15A-3-4 (a)(8).

not the WVDCR or the courts which have placed the Plaintiff in his current segregation status. He has done it himself because of his choices and actions over two decades.

Of course, this does not relieve WVDCR and its medical and mental health providers of their responsibility to provide the Plaintiff medical and mental health care to the best of their respective abilities to meet his needs. They argue that they have done so to Constitutional standards and will continue to do so. It is unfortunate that safety and security concerns must be considered with such seriousness, but it is simply not in the public interest to remove the Plaintiff from WVDCR custody to reside in a mental health facility or to place him in less secure detention.

The Plaintiff's claim does not meet the necessary factors for a preliminary injunction to issue, and his requested relief should be denied.

2. **The Plaintiff is unlikely prevail on the merits, as he cannot show the WVDCR acted with deliberate indifference to his medical needs.**

Deliberate indifference is a steep hill for the Plaintiff to climb. Even if taken as true, the Plaintiff fails to adequately state a legally sufficient claim for deliberate indifference against the WVDCR Defendants.

A litigant must demonstrate the following in an Eighth Amendment deliberate indifference claims, specifically as it pertains to inmate suicide attempts:

> An Eighth Amendment claim based on inadequate medical care requires a plaintiff to prove two elements; (1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety; and (2) defendants were deliberately indifferent to that risk. *See, e.g., Iko v. Shreve,* 535 F.3d 225, 241–43 (4th Cir.2008); *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir.2006). In a jail suicide case, the first element is satisfied because "suicide is a serious harm." *Collins,* 462 F.3d at 760. The second element—deliberate indifference—requires a dual showing: "that the defendant (1) subjectively knew the prisoner was at

substantial risk of committing suicide and (2) intentionally disregarded the risk."

*Smith v. Atkins*, 777 F. Supp. 2d 955, 964 (E.D.N.C. 2011)(some internal citations omitted).

The Fourth Circuit has held that a prison official who acted reasonably cannot be found liable for deliberate indifference in this context:

> Significantly, an official "who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970. The Court went on to note that, "[w]hether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."

*Brown v. Harris*, 240 F.3d 383, 389 (4th Cir., 2001).

The Plaintiff acknowledges that he met with Dr. Thistlethwaite in January 2025. (ECF No. 10, at 8). He also acknowledges that that he met with a PsiMed therapist on February 5, 2025, and that despite having thoughts about self-harm he had no intent to do so at that time. *Id*. at. 9. He had a regular psychiatric appointment scheduled for April 8, 2025. *Id*. Following his suicide attempt on April 6, 2025, he acknowledges that Narcan was twice administered to him, and he was taken to Montgomery General Hospital.[6] The Plaintiff was placed on suicide watch and a suicide risk assessment was done by PsiMed on April 7, 2025. *Id*., at 10. The Plaintiff alleges that a PsiMed employee determined that the Plaintiff should be removed from suicide watch Level II on April 8, 2025, and continued on a lesser suicide watch. *Id*., at 11. However, the Plaintiff concedes that he reported to a PsiMed employee that he was not suicidal. *Id*. at 12.

Further, what the Plaintiff characterizes as "punishment for suicide attempt" was actually appropriate discipline for possession of drugs. Exhibit No. 9. The Plaintiff apparently concedes

---

[6] The complaint incorrectly states that Montgomery General Hospital is located in Raleigh County, West Virginia. Montgomery General Hospital is located in Fayette County, as is MOCC.

that he "got any pills he could from other inmates." (ECF No. 10 at 10). While the WVDCR is not insensitive to the medical and mental health needs of the Plaintiff, that does not alleviate the WVDCR of its duty to ensure the safe and secure operation of its facilities and proceed with appropriate disciplinary proceedings when violations occur.

Even, *arguendo*, taking all the allegations in the complaint as true, the Plaintiff has simply failed to state a deliberate indifference claim against the WVDCR defendants. They are not healthcare or mental health providers. It is not disputed that the WVDCR has provided the Plaintiff with mental health treatment through Defendant PsiMed, its contracted service provider. The Plaintiff does not allege facts that constitute deliberate indifference to the directives of Defendant PsiMed concerning the Plaintiff's treatment.

The Plaintiff has also failed to allege facts which show that the WVDCR has intentionally disregarded the risks posed to the Plaintiff, as described in *Smith*. Further, the Plaintiff fails to make allegations that amount to the WVDCR not acting reasonably as it pertains to the ensuring the Plaintiff has received adequate mental health care. The Plaintiff, at best, arguably states a claim for common negligence. He does not state a claim for deliberate indifference of his medical needs in violation of Constitutional rights.

Further, insomuch as the Plaintiff complains that he should not be placed in segregation, he has only his own long history of misconduct to blame. The WVDCR arranges to sufficiently provide for his medical and psychiatric needs and argue that no showing to the contrary has been made by the Plaintiff. However, it is clearly reasonable of the WVDCR and its officials to maintain the Plaintiff's confinement in segregation based upon his long history of escape attempts and disciplinary violations. Simply, the Plaintiff's own conduct has left the MOCC with no reasonable alternative to maintaining him in a segregation unit.

Pursuant to the above-quoted language in *Brown*, the WVDCR defendants cannot be found liable for deliberate indifference if they acted reasonably. The actions of the WVDCR in this matter have been reasonable by facilitating his access to Defendant PsiMed mental health providers and providing him medical attention, including the administration of Narcan, after his suicide attempt. Further, maintaining his custody in a segregation unit is reasonable based upon the Plaintiff's well-documented escape attempts and other disciplinary violations. Simply, the Plaintiff is not likely to prevail on the merits, and the preliminary injunction should not issue.

3. **Permitting the Plaintiff to receive mental health treatment at a non-WVDCR facility would create a substantial safety risk.**

There is no dispute that the Plaintiff should receive adequate mental health treatment regardless of his history. However, that history cannot be ignored, and removing him from WVDCR custody to receive mental health treatment at William R. Sharpe, Jr. Hospital would create a threat of danger to facility staff, the public at large, and the Plaintiff himself. ECF No. 1-3, at 56.

William R. Sharpe, Jr. Hospital is not a secure WVDCR correctional facility. It is a psychiatric facility operated by the West Virginia Department of Human Services.[7] The Plaintiff has made serious escape attempts from MOCC, West Virginia's only maximum-security state prison, three times. Exhibit Nos. 3, 4, 7. He has shown a propensity for violence, both in his underlying conviction for murder and multiple disciplinary violations. Simply, the position of the WVDCR is that he is too much of an escape and safety risk to be housed at Sharpe Hospital.

[7] https://dhhr.wv.gov/officeofhealthfacilities/Pages/William-R.-Sharpe,-Jr.-Hospital.aspx, retrieved May 12, 2025.

West Viginia law provides that "…if the individual to be examined under the provisions of this section is incarcerated in a jail, prison, or other correctional facility, then only the chief administrative officer of the facility holding the individual may file the application, and the application must include the additional statement that the correctional facility itself cannot reasonably provide treatment and other services necessary to treat the individual's mental illness or substance use." W. Va. Code § 27-5-2(b). Defendant Frame is vested with the authority under state law to seek application for involuntary hospitalization of the Plaintiff and does not believe it is appropriate to do so, both based upon the aforesaid security concerns and the ability of Defendant PsiMed to provide psychiatric services at MOCC.

The WVDCR argues that PsiMed, its service provider, can adequately address the Plaintiff's mental health problems, and that no preliminary injunction should issue placing the Plaintiff in a non-WVDCR mental health facility.

4. **Prohibiting the WVDCR from housing the Plaintiff in a segregation unit both ignores security concerns and deprives the WVDCR of its lawful authority.**

The Plaintiff's request that an injunction issue which prohibits the WVDCR from housing him in a segregation unit ignores the Plaintiff's history of violence, escape attempts, and disciplinary violations. There is a legit interest in maintaining the Plaintiff and similarly situated inmates in more secure settings, and it serves a legitimate penological interest.

The Supreme Court has addressed the matter of balancing Constitutional protections with penological interests:

> *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64, and *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162, contain the basic substantive legal standards covering this case. While imprisonment does not automatically deprive a prisoner of constitutional protections, *Turner,* 482 U.S., at 93, 107 S.Ct. 2254, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere, *id.,* at 84–85, 107 S.Ct. 2254. As

> *Overton, supra,* at 132, 123 S.Ct. 2162, pointed out, courts also owe "substantial deference to the professional judgment of prison administrators." Under *Turner,* restrictive prison regulations are permissible if they are "reasonably related to legitimate penological interests." 482 U.S., at 89, 107 S.Ct. 2254.

*Beard v. Banks*, 548 U.S. 521, 521–22, 126 S. Ct. 2572, 2573, 165 L. Ed. 2d 697 (2006)

The Supreme Court went on to write "(i)nferences about disputed facts must be drawn in Banks' favor, but deference must be accorded prison authorities' views with respect to matters of professional judgment." *Id*.

There following test determines whether a legitimate penological interest exists:

> These factors are whether there is (1) "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it", (2) if there are "alternative means of exercising the right that remain open to prison inmates", (3) the impact of "accommodation of the asserted constitutional right ... on guards and other inmates, and on the allocation of prison resources generally", and (4) whether "ready alternatives for furthering the governmental interest [are] available". *Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (quoting *Turner,* 482 U.S. at 89). In applying the *Turner* factors, the court must "respect the determinations of prison officials." *United States v. Stotts,* 925 F.2d 83, 86 (4th Cir.1991). Further, the plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. *See Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir.1999).

*Johnson v. Jabe*, No. 7:09CV00300, 2010 WL 3855217, at *5 (W.D. Va. Aug. 24, 2010), *report and recommendation adopted in part, No. 7:09CV00300*, 2010 WL 3835207 (W.D. Va. Sept. 30, 2010), *and report and recommendation adopted in part,* No. 7:09CV00300, 2011 WL 2493763 (W.D. Va. June 22, 2011), aff'd, 456 F. App'x 318 (4th Cir. 2011)

Further, West Virginia law gives the Commissioner of the WVDCR and their designees authority to do, in pertinent part, the following:

> (1) Exercise general supervision over the administration of the institutions under the jurisdiction of the division…
>
> (2) Establish rules, policies, and regulations in writing governing all subdivisions and institutions within the division…

> (5) Classify the institutions of the division, varying according to the factors as security features, program, age, and sex of inmates, physical stature or size, character of inmates;
>
> (6) Establish a system of classification of inmates and residents, through a reception and examination procedure."

W. Va. Code Ann. § 15A-3-4 (a).

The WVDCR Defendants argue that maintaining the Plaintiff in his current confinement and the policies and procedures which give them the authority to do so are legitimate penological activities and appropriate exercises of the Commissioner's statutorily granted authority.

Turning to the four-factor test, the first factor is easily met; there is a valid rational connection between wanting to keep inmates such as the Petitioner, who has a history of violence and escape attempts, in a more secure form of detention. Further, the Progressive Reintegration Opportunity Committee regularly reviews the detention of the Plaintiff and similarly situated inmates. Exhibit No. 22. Thus, there is a rational connection between this prison regulation and a legitimate governmental interest.

The second factor is also satisfied by the WVDCR. The right to adequate psychiatric care asserted by the Plaintiff is respected through the services provided by Defendant PsiMed through the WVDCR.

Third, accommodating the Plaintiff's request would place the MOCC, its staff, and other inmates in danger because of the Plaintiff's well-documented history of escape attempts and violence. Addressing such incidents creates a safety risk and exhausts prison resources.

Fourth, there is no reasonable alternative to maintaining inmates such as the Plaintiff who are violent and serious escape risks, in segregation units. This type of detention is warranted by the Plaintiff's own conduct and permitting him to be placed in a less secure setting creates an

escape risk and a risk of the numerous kinds of harm which flow from an inmate escape from prison.

Simply, the WVDCR is justified in its decision to maintain the Plaintiff in a segregation unit, and the policy permitting him to do so is an appropriate exercise of executive authority bestowed by statute. His multiple escape attempts are obviously the primary concern, but he also simply fails to stay out of administrative trouble long enough to demonstrate that he would be a good candidate for less-secure detention.

**CONCLUSION**

WHEREFORE, the Respondents respectfully ask this Honorable Court to deny the Plaintiff's motion for a temporary restraining order or preliminary injunction and further grant any other relief it deems appropriate.

SUPERINTENDENT JONATHAN FRAME and ACTING COMMISSIONER LANCE YARDLEY,

By Counsel

JOHN B. MCCUSKEY
ATTORNEY GENERAL

/s/ *Jonathan M. Calhoun*

Jonathan M. Calhoun, W.Va. Bar No. 11134
Assistant Attorneys General
1900 Kanawha Blvd, East
Building 1, Room 400-West
Charleston, WV 25301
Phone: (304) 558-6828
Email: jcalhoun@wvago.gov

**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**KEITH LOWE,**

**Plaintiff,**

**v.** **Case No. 2:25-cv-000272**

**SUPERINTENDENT JONATHAN FRAME,**
**ACTING COMMISSIONER LANCE YARDLEY,**
**TIMOTHY THISTLETHWAITE, MD,**
**and PSIMED CORRECTIONS, LLC,**

**Defendants.**

**CERTIFICATE OF SERVICE**

I, Jonathan M. Calhoun, Assistant Attorney General, hereby certify that, on May 12, 2025, I electronically filed the foregoing "SUPERINTENDENT JONATHAN FRAME AND ACTING COMMISSIONR LANCE YARDLEY'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION" via the CM/ECF system, which will send notification to CM/ECF participants to the following:

Lydia C. Milnes, Esq.
Lesley M. Nash, Esq.
*Counsel for the Plaintiff*

Michael J. Del Giudice, Esq.
Roberta F. Green, Esq.
*Counsel for Defendant Timothy Thistlethwaite, MD.*

James Benjamin Shephard, Esq.
Tammy J. White-Farrell, Esq.
*Counsel for Defendant PSIMED Corrections, LLC*

/s/ *Jonathan M. Calhoun*

Jonathan M. Calhoun, W.Va. Bar No. 11134
Assistant Attorney General
1900 Kanawha Blvd, East
Building 1, Room E-26

Charleston, WV 25301
Phone: (304) 205-6830
Email: jcalhoun@wv.gov