IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

KEITH W.R. LOWE,

    Plaintiff,

v.                                                            Civ. Act. No: 2:25cv272
                                                            (Judge Thomas Johnston)

SUPERINTENDENT JOHN FRAME,
COMMISSIONER DAVID KELLY, and
SECRETARY MICHAEL CARUSO,

    Defendants.

**EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION, FOR CIVIL CONTEMPT, AND FOR SANCTIONS**

Plaintiff Keith Lowe, by counsel, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65, for an order enforcing the Court's preliminary injunction of May 23, 2025. This Court ordered Defendants Frame and Kelly to "effectuate [Plaintiff's] transfer to a state psychiatric facility" and to "accomplish this FORTHWITH." Dkt. No. 40. It is now July 24, 2025—more than 60 days after the date of this Court's order—and Plaintiff remains at Mount Olive Correctional Complex ("MOCC"), despite the Court's order and despite a mental hygiene commissioner finding on two separate occasions that commitment to an inpatient facility is appropriate.

Plaintiff now respectfully requests that this Court enter an order enforcing its preliminary injunction of May 23, 2025. Plaintiff further requests that the Court judge Defendants to be in civil contempt and enter sanctions comprised of the attorney fees accumulated in pursuing enforcement of the Court's previously entered preliminary injunction.

1

## STATEMENT OF RECENT FACTS

Plaintiff incorporates by reference the facts laid out in his Emergency Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction. *See* Dkt. No. 1-3 at 43-48.

On May 23, 2025, this Court entered an order granting in part Plaintiff's motion for preliminary injunction and requiring Defendants "to effectuate his transfer to a state psychiatric facility," further ordering "that Defendants accomplish this **FORTHWITH**." Dkt. No. 40 at 26. As of the date of this filing, Mr. Lowe remains at Mount Olive, held in solitary confinement.

On May 28, 2025, Defendant Frame filed an application for involuntary custody for mental health evaluation, sometimes called a mental hygiene, for the Plaintiff. *See* Dkt. No. 69 at 1-5. In this application, Defendant Frame stated that "United State District Judge Thomas E. Johnston has ordered that the facility file this petition [*sic*] court order will be attached." *Id.* at 2.

On or about May 27, 2025, Defendant Frame sent a memorandum to the mental health commissioner regarding Mr. Lowe, stating, "Below is the medical, mental health, conviction and Institutional Record history of Inmate Keith Lowe." Dkt. No. 69-2 at 1. Defendant Frame closed his memo by stating, "Attached is a breakdown of the severity of the Class-I write ups to show the threat to security that [Mr. Lowe] is capable of." *Id.* at 2.

On Thursday, May 29, 2025, Defendant Frame moved Mr. Lowe from his cell in the solitary confinement unit to a cell in Mount Olive's Mental Health Unit (MHU). *See Exhibit 1, Email from Defendant Frame and Kelley's Counsel*. Mr. Lowe's belongings were initially confiscated following this move. Defendants' counsel stated that "[i]t is the understanding of the DCR that there should be a bed available for him at Sharpe assuming that Mr. Lowe is certified at the mental hygiene hearing tomorrow." *Id.*

2

The cell on the mental health is also an isolation cell, in which Mr. Lowe is housed 24 hours a day by himself. After this transfer, Mr. Lowe endured periods of up to five days with no offer of recreation. Moreover, conditions on the MH unit are worse than on the solitary confinement unit – other inmates held in the MH unit stay up all night, banging on doors and walls, and yelling. Mr. Lowe suffered severe panic attacks throughout his first night on the Unit. *See* Dkt. No. 69-4 at 48 ("people beat & bang. More aggravated due to the other inmates").

The following day, May 30, 2025, when Mr. Lowe requested to see a mental health clinician, a correctional officer on the unit refused to assist, and falsely told Mr. Lowe that no one from mental health could see him.[1] Mr. Lowe thereafter made multiple additional requests to see a mental health provider to no avail. Upon learning of this development, the undersigned called counsel for former-Defendant Psi-Med, who contacted his client, who promptly dispatched a mental health provider to meet with Mr. Lowe.

On Friday, May 30, 2025, Mr. Lowe was taken before a mental hygiene commissioner for a probable cause hearing. Mr. Lowe was first evaluated by mental health clinician, Dr. Jill Daniel, who found that Mr. Lowe was a danger to himself, rating that he required "immediate hospitalization in a 24-hour locked facility." Dkt. No. 69-3 at 13. Dr. Daniel noted that she was "<u>unable</u> to speak to provider" prior to the probable cause hearing. *Id.* at 8 (emphasis in original). She further noted that "respondent needs inpatient tx [treatment] to address suicidality. App was

---

[1] The mental health unit is staffed with DCR correctional officers, not mental health staff. Thus, Mr. Lowe continues to have to rely on DCR employees to assist him when he needs to see mental health, despite being moved to the "mental health unit."

3

ordered and filed on an ostensibly voluntary patient." *Id*. at 9.[2] She ultimately found that "[t]he Respondent should be committed for further evaluation pursuant to § 27-5-3." *Id*. at 14.

Mr. Lowe then appeared before Evan Dove, Mental Hygiene Commissioner, with court-appointed counsel from the Fayette County Public Defender's Office, Ashley Brash. Defendant Frame appeared with counsel from the West Virginia Attorney General's office, Gail Lipscomb. Dkt. No. 69-3 at 16. During this hearing, Defendant Frame testified that he did not believe Mr. Lowe needed to be civilly committed, arguing both in the mental hygiene petition and before the mental hygiene commissioner that "MOCC *can* handle the treatment of the Adult Respondent." *Id*. at 20 (emphasis in original). Upon information and belief, Defendant Frame and his counsel at the probable cause hearing both argued that Mr. Lowe was too dangerous to be housed at William R. Sharpe Psychiatric Hospital in West Virginia. The commissioner's order further states—with no citation to any evidence or authority—that "Adult Respondent could just as likely be attempting to earn himself a free trip to a less secure facility, so that he might try to escape or do harm to the general public." *Id*.

Despite these qualms—wherever they arose—the commissioner nonetheless held that "[i]t is clear that this man will attempt to kill himself again based on his own admission … it is likely that deterioration will occur without clinically necessary treatment." *Id*. at 22. Commissioner Dove ultimately ordered that Plaintiff "be committed to the custody of the Secretary of the Department of Health and Human Resources for initial placement at William R. Sharpe Hospital with diversion to any appropriate mental health facility." *Id*. at 18.

---

[2] Notably, Plaintiff waived his right to a probable cause hearing, stating that he *should* be committed. Under state law, this appears to be a matter much more suited to be handled under W. Va. Code § 27-4, which governs the ability of mental health facilities to receive *voluntary* patients.

4

Upon information and belief, counsel for Defendant Frame further argued that if the Commissioner did civilly commit Mr. Lowe, he should be sent to a "highly secure" out-of-state hospital, rather than a West Virginia facility. Defendant Frame submitted Mr. Lowe's disciplinary record into evidence. *See generally* Dkt. No. 69-2. On June 10, 2025, the undersigned counsel filed a request for records from Plaintiff's probable cause hearing before the mental health commissioner. Dkt. No. 69-3 at 24-25.

Following this hearing, Mr. Lowe was maintained at MOCC, despite his declining mental health. On June 13, 2025, Dr. Paramjit Chumber, Chief Medical Officer at William R. Sharpe Jr. Hospital, and Dr. Kristin Canterbury, employed by PSI-MED, filed an Application for Final Commitment before the Fayette County Circuit Court. Dkt. No. 69-3 at 29. In this application, Dr. Chumber stated that he believed Mr. Lowe was "likely to cause serious harm to self or others due to what the applicant believes are symptoms of MENTAL ILLNESS." *Id*. at 30. In her application, Dr. Canterbury noted current, specific symptoms as "increased anxiety with panic attacks and ruminating/intrusive thoughts; depressed mood with hopelessness and intermittent suicidal ideation; difficulty regulating emotions and impulsivity; ongoing significant stress of long-term segregation housing in prison." *Id*. at 36. Dr. Canterbury endorsed that Mr. Lowe "should be finally committed for an indeterminate period exceeding 90 days." *Id*. at 41.

Dr. Daniel once again examined Mr. Lowe prior to his hearing before the mental hygiene commissioner. During this examination, she found that Mr. Lowe "reports daily SI [suicidal ideation], worse since last hearing." Dkt. No. 69-4 at 46. She noted that Mr. Lowe reported that his sleep and mood were worse following his placement on the mental health unit and that he is "consumed with thoughts of killing [himself]—all day—worse since last hearing." *Id.* at 48. She also noted that he reported "[n]o thoughts of harming others." *Id.* Her report also noted that Mr.

Lowe was "[m]oved to mental health unit @ MOCC the evening before the PC [probable cause] hearing 05/29/2025 from solitary confinement. Hx [history] of 11-12 years solitary confinement." *Id*. at 49.

Notably, Dr. Daniel also stated the following in her report:

Diagnosed w/numerous disorders over the years and as pointed out in the federal court order. Mr. Lowe was certified/hospitalization recommended to mitigate [] risk to self, due to reported daily SI [suicidal ideation] w/intent, plan & urges to act on plan + reported hopelessness. MHC found probable cause for hospitalization 5/30/2025. State AG (on behalf of WRS & MOCC) & MOCC argued Mr. Lowe's tx needs could be met inside the prison w/admission to MOCC's mental health unit.

*Id*. Dr. Daniel additionally stated that Mr. Lowe "needs inpatient to address SI + intent; evasive about plan but states he can find a way. States he wants to die due to hopelessness." *Id*. at 50. Dr. Daniel once again endorsed that Mr. Lowe had a moderate probability of seriously harmful behavior and required "immediate hospitalization in a 24-hour locked facility." *Id*. at 52.

On June 30, 2025, Plaintiff appeared before the mental hygiene commissioner for a final commitment hearing. At the conclusion of this hearing, final commitment was found appropriate, with the commissioner finding that Mr. Lowe was, "as a result of mental illness and or substance use disorder is likely to cause serious harm to him/herself and/or others … [he] has attempted suicide in the past several months on numerous occasions. He presently expresses a plan to kill himself at this time and will act on it if given the chance." Dkt. No. 69-4 at 41. The commissioner also found that treatment through Psi-Med at MOCC "has not solved his suicidal ideation and further treatment at a facility is requested." *Id*. at 42. The commissioner, however, once against expressed that Mr. Lowe was too "dangerous," and stated that a suitable treatment facility would need to be found. He emphasized that "the court expects a response within 2 weeks." *Id*.

Despite a clear finding that he was a risk to himself and needs more intensive treatment, Mr. Lowe was *once again* returned to MOCC and placed on the mental health unit, where he

6

continued to be housed in solitary confinement. On July 1, 2025, undersigned counsel reached out to counsel for Defendants Frame and Kelly to request information on the outcome of Mr. Lowe's final commitment hearing. Defendants' counsel responded that "final commitment was granted" and that "the Department of Health Facilities is still trying to locate an appropriate placement for Mr. Lowe." *Exhibit 2, Email Between Counsel for Plaintiff and Counsel for Defendants Frame and Kelly,* 2. Defendants' counsel also stated that "the ball is in the Department of Health Facilities' court in terms of Mr. Lowe's placement and treatment at this time." *Id*. at 1.

Early on the morning of July 7, 2025, Mr. Lowe once again committed self-harm. While housed on MOCC's mental hygiene unit, he acquired a razor and cut both his forearms and his genitals. *Exhibit 3, Plaintiff Medical Records*, 6, 9-10. Mr. Lowe expressed to correctional staff that he needed to "release the inside pain, outward." *Exhibit 4, Incident Reports*, 3. Mr. Lowe spoke with PSI-MED staff for approximately 15 minutes over a Zoom call on July 7, 2025. All of his property was "loaded into a Quilliams Two cart so it could be placed into a locked office in MHU." Ex. 4 at 2.

Mr. Lowe was placed on Level 1 (constant) watch from July 7 to July 9, 2025. He was then placed on a Level II watch from July 9 to July 14, 2025; he was discharged from suicide watch on the afternoon of July 14. Ex. 3 at 7. On July 11, 2025, Mr. Lowe received *some* of his property back, including a bar of soap, a toothbrush, toothpaste, and coffee. *Id*. at 8.

On July 22, 2025, this Court entered an order granting Plaintiff's motion to join Michael Caruso, Secretary of the West Virginia Department of Health Facilities (WVDHF) to this action, finding that "[s]ince action by Secretary Caruso and WVDHF is necessary to bring about the full relief sought by Plaintiff, he is necessary to the action." Dkt. No. 65 at 10.

As of the date of this filing, Mr. Lowe remains incarcerated at MOCC—two months after this Court's order requiring his transfer and more than three weeks after his final commitment was ordered by the Fayette County Circuit Court. In that time, he has once again harmed himself—a natural and foreseeable consequence of his *severe* mental illness.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction binds "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." This rule makes clear that "an injunction can be enforced against a person who acts in concert" with a party or their agent. Fed. R. Civ. Pro. 65 advisory committee's note on 2007 amendments.

**DISCUSSION**

As an initial matter, though Defendant Caruso was joined to this matter as a Defendant on July 22, 2025, *see* Dkt. No. 65, the preliminary injunction applied to and could be enforced against WVDHF as a person who was "in active concert or participation" the parties in this matter. *See* Fed. R. Civ. Pro. 65(d)(2)(C). *See, e.g., Vyas v. Noem*, 2025 U.S. Dist. LEXIS 88200, n.3 (S.D.W. Va., May 8, 2025) (noting that the preliminary injunction binds "other persons who are in active concert of participation" with defendants). Defendant Caruso and WVDHF inserted themselves into this matter in early June 2025 and have been identified by Defendants Frame and Kelly as essential in complying with this Court's order.

As this Court found in its order of July 22, 2025, granting joinder of Defendant Caruso to this matter, "despite receiving an initial commitment order under state law, WVDHF was not accepting Plaintiff into a facility. It seems that Plaintiff remains in a similar condition to those in which he was held prior to this litigation." Dkt. No. 65 at 2. Not only does Mr. Lowe remain in

8

similar conditions, but the certified mental health professional who examined him reports that his condition has deteriorated in the two months since this Court's preliminary injunction was entered. *See* Dkt. No. 69-3 at 46-49. Shortly after Mr. Lowe's final commitment hearing on June 30, 2025—after which he was returned to MOCC rather than being transferred to a psychiatric facility—Mr. Lowe harmed himself with a razor blade, cutting forearms and his genitals. *See generally* Ex. 3.

The high risk that Mr. Lowe would harm himself absent intensive mental health treatment and intervention was known by *everyone*. This Court, in its May 23, 2025, preliminary injunction, stated that, absent such intervention, "Plaintiff's risk of suicide will continue to loom." Dkt. No. 40 at 21. On May 30, 2025, the mental hygiene commissioner clearly understood that "[i]t is clear that this man will attempt to kill himself again." Dkt. No. 69-3 at 22. On June 13, 2025, Dr. Chumber reported that he believed it was likely that Mr. Lowe would "cause serious harm to self" due to his mental illness. *Id.* at 30. Again, on June 30, 2025, Dr. Jill Daniel found Mr. Lowe to be "consumed with thoughts of killing [himself]," which had worsened since his probable cause hearing on May 30, 2025. Dkt. No. 69-4 at 48. On June 30, 2025, the mental hygiene commissioner *again* found that Mr. Lowe "continues to exhibit suicidal ideation" and "expresses a plan to kill himself … and will act on it if given the chance." *Id.* at 41. Undersigned counsel expressed their concerns about Mr. Lowe's mental state to counsel for Defendants Frame and Kelly on July 1, 2025, stating, "We are also incredibly concerned that, after finding final commitment appropriate yesterday, Mr. Lowe was returned to MOCC, to the unit and conditions in which his condition has deteriorated in recent weeks." Ex. 2 at 1.

This Court entered a preliminary injunction on May 23, 2025, to prevent just the sort of harm which has occurred. Defendants Frame, Kelly, and Caruso have utterly failed to comply with this order. Defendant Frame argues that he has complied to the best of his ability—yet argued

9

before the mental hygiene commissioner that he only filed an application for Mr. Lowe's commitment upon the order of this Court, and that he believes MOCC can fully treat Mr. Lowe. *See* Dkt. No. 69-3 at 20; Dkt. No. 69-4 at 49.

Defendant Caruso argues that Plaintiff's placement in a mental health facility is "out of DHF's control," Dkt. No. 55 at 8, and that he "lacks any statutory power to control [the mental hygiene process's] outcome." *Id.* at 10. Yet the mental hygiene process found final commitment was necessary for Plaintiff *twenty four* days ago. Furthermore, WVDHF refused to accept Mr. Lowe for treatment after his probable cause hearing on May 30, 2025. As reported by Dr. Daniel, Attorney General Gail Lipscomb, apparently on behalf of *both* Defendant Frame and William R. Sharpe Jr. Hospital, argued that Plaintiff's "needs could be met inside the prison." Dkt. No. 69-4 at 49. This is clearly not the case, and it is also clearly in defiance of this Court's order.

As the Supreme Court has held, "If a party can make himself judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 450 (1911). Rather than complying with this Court's order—and the findings of multiple mental health providers—Defendants have continued to house Mr. Lowe in conditions amounting to solitary confinement at MOCC for the past two months. In this period, Mr. Lowe has once again harmed himself, to "release the inside pain, outward." Ex. 4 at 3.

Plaintiff seeks an order from this Court requiring Defendants to comply with the outstanding preliminary injunction *immediately* and effectuate his transfer to a mental health facility. Plaintiff believes that the Court can and should act with urgency on this matter: as recent

events have shown, Plaintiff's mental health has continued to deteriorate since the hearing before this Court in May of this year.

**CONTEMPT AND SANCTIONS**

Additionally, Plaintiff requests that this Court find Defendants in civil contempt of its May 23, 2025, Preliminary Injunction and impose sanctions for violation of said injunction in the form of: (1) the attorney fees accumulated by Plaintiff's attempts to gain WVDCR and WVDHF's compliance with this order; and (2) a set monetary sanction for each day that Plaintiff has remained at MOCC in defiance of this Court's order.[3] As the Fourth Circuit has found, "[t]he essence of civil contempt … is to coerce compliance with judicial orders … And sometimes an award of damages is necessary to incentivize compliance." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020) (cleaned up); *see also Redken Labs, Inc. v. Levin*, 843 F.2d 226, 230 (6th Cir. 1988) (citations omitted) (holding that the primary purposes of civil contempt "are to compel obedience to a court order and compensate for injuries caused by noncompliance").

The Fourth Circuit has imposed a four-part test for a finding of civil contempt: "(1) the existence of a valid court order; (2) the order was in the moving party's favor; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation." *Klopp,* 957 F.3d at 461 (citing *United v. Ali,* 874 F.3d 825, 831 (4th Cir. 2017)). "Once the movant establishes these elements, the burden shifts to the defendant to show good faith in making all reasonable efforts to comply with the enforcement order." *Id*. (cleaned up).

Here, Plaintiff can easily meet the requirements laid out by the Fourth Circuit. First, there is a clear and valid court order, entered by this Court on May 23, 2025, requiring that Mr. Lowe

---

[3] Plaintiff suggests this sanction could be set retroactively from (a) May 30, 2025, when probable cause for his commitment was found by the mental hygiene commissioner; or (b) June 30, 2025, when the mental hygiene commissioner found that final commitment was appropriate.

be transferred to a state psychiatric facility. *See* Dkt. No. 40 at 26. Second, this order was in Mr. Lowe's favor, granting in part his motion for preliminary injunction and providing him relief from complained of violations. *See generally id.* Third, Defendants Frame, Kelly, and Caruso have committed knowing violations of this order. Despite this Court's order, both Defendant Frame and WVDHF have argued that Plaintiff's "needs could be met inside the prison." Dkt. No. 69-4 at 49.

More two months after the entry of this Court's preliminary injunction, Mr. Lowe remains at MOCC. Furthermore, though Defendant Caruso was only joined to this case on July 22, 2025, as a defendant, he has been aware of this matter and the Court's order since at least June 5, 2025, when counsel for WVDHF appeared at a telephonic status conference. *See* Dkt. No. 44. Furthermore, Defendants Frame and Kelly have alleged that they are now reliant on Defendant Caruso to ensure Mr. Lowe receives a placement at a state psychiatric facility. *See* Ex. 2 at 1.

Finally, Mr. Lowe has clearly suffered harm from these violations. He remains at MOCC, in conditions amounting to solitary confinement, where his mental health has continued to deteriorate. Approximately six weeks after this Court entered an order requiring Defendants to transfer Mr. Lowe to a psychiatric facility, Mr. Lowe—who still remained at MOCC—used a razor to harm himself, seeking to "release the inside pain, outward." Ex. 4 at 3.

## CONCLUSION

Plaintiff respectfully requests that this Court enforce its preliminary injunction of May 23, 2025, against Defendants. He further requests that Defendants be judged in civil contempt, and that damages and sanctions in the form of attorney fees accrued in pursuing enforcement of the preliminary injunction be awarded. Plaintiff additionally requests any further equitable relief deemed suitable by this Court.

Finally, Plaintiff urges this Court to set an expedited schedule for briefing and a decision in this matter. As demonstrated above and as is clear in the reports and statements of mental health professionals, Mr. Lowe's mental state continues to deteriorate the longer he remains at MOCC without sufficient treatment.

**Respectfully Submitted,**
**KEITH W.R. LOWE,**
**By Counsel,**

/s/ *Lesley M. Nash*
Lydia C. Milnes (WVSB #10598)
Lesley M. Nash (WVSB #14158)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Phone: (304) 326-0188
Fax: (304) 326-0189
lydia@msjlaw.org
lesley@msjlaw.org
*Counsel for Plaintiff*