IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**KEITH LOWE,**

    **Plaintiff,**

v.                                                                                       Civ. Act. No: 2:25cv272
                                                                                     Judge Thomas Johnston

**SUPERINTENDENT JOHN FRAME, et al.,**

    **Defendants.**

<u>**REQUEST FOR COMPENSATORY CIVIL CONTEMPT SANCTIONS**</u>

Comes now Plaintiff, by counsel, and pursuant to this Court's Order of August 25, 2025 (Dkt. No. 99), "seek[s] compensation for his July suicide attempt." *Id*. at 19. Similarly, Plaintiff's counsel provides, as an attachment, "a sufficiently detailed accounting of the relevant costs associated with Defendants' contempt." *Id.*

**LEGAL STANDARD**

The remedy for civil contempt is within the Court's discretion. *In re General Motors Corp*., 61 F.3d 256, 259 (4th Cir. 1995). Compensatory civil contempt sanctions are designed "to compensate the complainant for losses sustained." *Bradley v. American Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004); *see also Travelhost, Inc. v. Blandford*, 68 F.3d 958, 962 (5th Cir. 1996). Provided those principles are adhered to, a contemnor can be ordered to pay the Court a fee, *id*. at 378, to compensate for the "actual loss to the complainant caused by the actions of [the contemnor]," *Schwartz v. Rent-A-Wreck America*, 261 F. Supp. 3d 607, 617 (D. Md. 2017); *see also Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 455-56 (1932) ("a proceeding for civil contempt is for the purpose of compensating the injured party"). A party is entitled to

1

compensatory relief constituting attorney's fees incurred in prosecuting a contempt proceeding. *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 77-78 (D.D.C., May 11, 2009).

## DISCUSSION

As ordered by the Court, Plaintiff's counsel submits affidavits detailing the relevant costs associated with Defendants' contempt, including "the contempt hearing itself, motions to receive state court records, a joinder motion, an amended complaint, and whatever other means were necessary, including preparation time, expenses, and time consulting with [the] client." Dkt. No. 99 at 19. As a result of Defendants' contempt, Plaintiff's counsel seeks $26,007.50 in fees and $355.24 in costs. *See Exhibits 1-4, Affidavits of Sarah K. Brown, Lydia C. Milnes, Lesley M. Nash, and Bren J. Pomponio*; *Exhibit 5, Costs*.

The Court has also invited Plaintiff to "seek compensation for his July suicide attempt." Dkt. No. 99 at 19. Compensatory contempt fits this situation. "The central irony of compensatory contempt is that the remedy confesses failure. The defendant violated the injunction, thus thwarting the judge's conclusion that the plaintiff should enjoy the substantive right. … The injunction failed to prevent the violation, but compensatory contempt may encourage the plaintiff to respect the injunction process, ameliorate some of the plaintiff's damages, and structure incentives to discourage future breaches." Doug Rendleman, <u>Compensatory Contempt: Plaintiff's Remedy When a Defendant Violates an Injunction</u>, 1980 University of Ill. L. For. 971, 974 (1980) (available at <https://scholarship.law.wm.edu/facpubs/887/>).

On July 7, 2025, approximately six weeks after this Court entered its preliminary injunction on May 23, 2025, *see* Dkt. No. 40, Mr. Lowe "acquired a razor and cut both his forearms and his genitals." Dkt. No. 97 at 7. As this Court learned in the subsequent hearing, and discusses in footnote 15 of its August 25, 2025 order (Dkt. 99), despite Mr. Lowe's known susceptibility to

2

suicidal ideations, and known history of self-harm with a razor, and despite the Court's findings that Mr. Lowe was in need of mental health treatment in an inpatient facility, Defendant Frame had failed to place Mr. Lowe on a razor restriction. Mr. Lowe cut the word "HELP" onto his right forearm and cut his forearm; these were bandaged with steri-strips and gauze. An additional razor cut to his penis received seven sutures. Dkt. No. 97-3 at 1-2. Mr. Lowe was kept on suicide watch until his discharge from watch on July 14, 2025. As of the date of this filing, the cuts to Plaintiff's arms have healed and are beginning to scar. The cuts to his genitalia, however, continue to cause Plaintiff issues, and he reports concerns regarding full functionality. He intends to seek medical treatment for this issue at MCFP Springfield.

There is little precedent on the appropriate damages for an ultimately unsuccessful suicide attempt. *See Driscoll v. City of Irvine* (case settled for $100,000.00 prior to trial in which the plaintiff sued the City of Irvine's police department for negligence after an unsuccessful suicide attempt by hanging while in custody), L.A. Times Archive, *Irvine: City Agrees to Pay $100,000 to Ex-POW*, July 8, 1989 (available online at https://www.latimes.com/archives/la-xpm-1989-07-08-me-2752-story.html); *Bias v. Woods*, 288 Fed. Appx. 158 (5th Cir. 2008) (upholding damage award of $103,800.00 against prison psychiatrist who delayed medical care while plaintiff was in a comatose state following suicide attempt).

While settlements and jury verdicts for wrongful deaths by suicide in prisons and jails are common, thankfully, that is not the situation in which Plaintiff finds himself. *See, e.g.*, *Scarpi v. St Clair County Sheriff*, (S.D. Ill. 2018) (jury verdict of $301,000, finding in favor of plaintiffs on failure to protect and wrongful death where adult male committed suicide after informing officer he would do so, failure to follow suicide protocol; found in favor of defendants regarding unconstitutional policy or practice claim); *Bragado v. City of Zion*, 839 F. Supp 551 (N.D. Ill., Dec.

7, 1993) (affirming jury verdict of approximately $237,000 for failure to monitor suicidal prisoner); *Sinclair v. Union County*, Civ. Act. No. 2:05-cv-55 (D. N.J. 2007) (settlement of $780,000 where 17 year old committed suicide by hanging from a bedsheet looped over a fire sprinkler, which had been reported as a safety hazard six months previously); *Estate of Enoch v. Tienor*, 570 F.3d 821 (7th Cir. 2009) (overturning trial court's reduction of attorney fee award and noting settlement of $635,000.00 for suicide that occurred while inmate was on suicide watch); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917 (7th Cir. 2004) (affirming judgment of federal district court and jury award of $1.75 million following suicide of pretrial detainee in custody); *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3rd Cir. 1991) (affirming district court's denial of defendant's post-trial motion and judgment on the verdict in case including jury award of $1 million for suicide of intoxicated detainee in custody).

There is also considerable precedent regarding settlements and jury verdicts for deliberate indifference to serious medical issues that do not result in death. *See, e.g.*, *Muhammad v. U.S.*, 6 F. Supp. 2d 582 (N.D. Tex., May 12, 1998) (jury award of $45,000 under FTCA for prisoner held in facilities unsuitable for his medical condition, causing pain and anguish); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992) (upholding $95,000 compensatory damages jury award for failure to provide medication for tuberculosis).

> As this Court found in its August 25, 2025, Order:
>
> It is clear that Plaintiff was harmed as a result of Defendants' violation of the order. Because of Defendants' efforts to prevent Plaintiff's transfer to a state psychiatric facility, Plaintiff was kept at Mount Olive in the mental health unit. The mental health certifier indicated that Plaintiff's thoughts of suicide worsened in the time between the probable cause and final commitment hearings. (See ECF No. 69-4 at 48.) More alarming, however, is the fact that Plaintiff ultimately attempted suicide again following Plaintiff's final commitment. (See ECF No. 97-3.) … Plaintiff's continued confinement at Mount Olive in conditions which mirror his solitary confinement have clearly created the very harm the Court sought to avoid.

Dkt. No. 99 at 16. Plaintiff was held at Mt. Olive Correctional Complex for more than three months *after* this Court entered an order requiring that he be transferred to a state psychiatric facility to receive treatment for his serious mental health issues. During this time, Mr. Lowe was kept on conditions that amounted to solitary confinement. He was not placed on a razor restriction, despite his previous suicide attempt with a razor. He was dragged through procedural hearings where he was told by counsel for Defendant Caruso that his "depression, anxiety, hopelessness, and really worthlessness" were due to "his own actions," Dkt. No. 91-4 at 00:38:48, and that counsel did not "feel sorry for him," did not "buy into his victimization," and "certainly hope this Court doesn't." *Id*. at 01:38:45. These events all occurred after Plaintiff had engaged in federal litigation and had a ruling from this Court that he was likely to prevail on the merits of his underlying Eighth Amendment claim.

Guided by previous settlements and jury awards in cases related to attempted suicides and deliberate indifference to serious medical issues, as well as this Court's recent order, Plaintiff respectfully requests compensatory civil contempt sanctions in the amount of $100,000.00 for his suicide attempt on July 7, 2025, for the denial and unavailability of appropriate medical care between the date of this Court's order and Plaintiff's transfer on September 10, 2025; and for the conditions amounting to solitary confinement on which he was held at Mt. Olive following the Court's order of May 23, 2025, and the mental effect thereof.

## CONCLUSION

As a result of Defendants' actions in defiance of this Court's order, Plaintiff suffered harm in form of conditions that amount to solitary confinement on Mt. Olive's Mental Health Unit (MHU) and an event of serious self-harm on July 7, 2025. Plaintiff therefore seeks:

- Attorney fees in the amount of $26,007.50[1]

- Costs in the amount of $355.24

- Compensatory civil contempt sanctions in the amount of $100,000.00.

                                      **Respectfully submitted,**
                                      **Keith Lowe,**
                                      By counsel:

/s/ *Lesley M. Nash*
Lesley M. Nash (WVSB #14158)
Lydia C. Milnes (WVSB #10598)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Telephone: (304) 326-0188
lesley@msjlaw.org
lydia@msjlaw.org

---

[1] The attorney fees request contemplates counsel's time up to and including the filing of this motion. Plaintiff's counsel requests that that they be permitted to provide the Court with a supplement for additional time that might be required to defend or otherwise argue to obtain a final compensatory contempt award.