## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| KEITH LOWE,<br><br>                Plaintiff,<br><br>        v.<br><br>SUPERINTENDENT JOHN FRAME, et al.,<br><br>                Defendants. | Civil Action No. 2:25-CV-00272<br><br>District Judge Thomas E. Johnston |

## DEFENDANT SUPERINTENDENT FRAME'S OPPOSITION TO PLAINTIFF'S REQUEST FOR COMPENSATORY CIVIL CONTEMPT SANCTIONS

Plaintiff requests compensation for perceived harm related to his alleged suicide attempt and relevant legal costs. *Request for Comp. Civil Contempt Sanctions*, ECF No. 105. Plaintiff's request for compensatory sanctions fails for two reasons. First, Superintendent Frame deserves criminal procedural protections for such sanctions. Second, Plaintiff's requested sum is largely prohibited, excessive, and unreasonable. Further, the Court should stay any enforcement of Plaintiff's request pending Superintendent Frame's anticipated appeal.

### BACKGROUND

On April 6, 2025, WVDCR employees found, resuscitated, and rehabilitated Plaintiff after an unsuccessful suicide attempt involving a drug overdose. Plaintiff had collected as much suboxone as possible from fellow inmates to "get out" of Mt. Olive. Later, Superintendent Frame moved Plaintiff into Mt. Olive's Mental Health Unit for further care and supervision. On July 7, Plaintiff cut his arms and genitals with a razor, an act he alleges was a suicide attempt. When WVDCR discovered Plaintiff's self-mutilation, it immediately treated him and placed him under heightened supervision.

On April 24, 2025, Plaintiff moved this Court, in relevant part, to be transferred from Mt. Olive to a state psychiatric facility. *Verified Emergency Compl. For Inj. Relief*, ECF No. 1-3, at 16. On May 23, the Court granted Plaintiff's motion, ordering Defendants to "effectuate [the Plaintiff's] transfer to a state psychiatric facility." *Mem. Opinion & Order*, ECF No. 40 at 26. Consistent with his statutory authority and this Court's order, *id.* at 25 (citing W. Va. Code § 27-5-2(b)), Superintendent Frame did so by filing an application to have Plaintiff committed to a state psychiatric facility pursuant to West Virginia Code § 27-5-2(b). As part of that application, Superintendent Frame included an institutional record that revealed Plaintiff's urgent security and flight risks. ECF No. 69-2.

On May 30, Mental Hygiene Commissioner Evan Dove held a probable cause hearing for Plaintiff's commitment into the state psychiatric facility. *Order: Probable Cause for Involuntary Hospitalization*, ECF No. 91-3. During that hearing, Superintendent Frame testified consistently with his application and his testimony at the preliminary injunction hearing. *See Hearing Recording*, ECF No. 91-4. The Commissioner then committed Plaintiff to the custody of the Department of Health Facilities (WVDHF) with placement in William R. Sharpe Hospital. ECF No. 91-3, at 7. However, the Commissioner also concluded that the hospital could not handle Plaintiff's heightened security needs due to Plaintiff's "extremely violent and unique character." *Id.* Therefore, Plaintiff was to remain at Mt. Olive until WVDHF could locate a proper transfer facility. *Id.*

Around June 30, WVDHF identified the United States Medical Center for Federal Prisoners in Springfield, Missouri (MCFP Springfield) operated by the federal Bureau of Prisons (BOP), as a suitable placement. After a state referral process, BOP accepted Plaintiff's transfer referral. Plaintiff continued to receive telepsych mental health treatment throughout his time in

the mental health unit while awaiting transfer.  Plaintiff was transferred to MCFP Springfield, pursuant to BOP's scheduling, on September 10 and arrived at MCFP Springfield on September 11.  *Status Update*, ECF No. 100.

In the meantime, Plaintiff filed a motion to enforce the transfer, for contempt, and for sanctions.  *Emergency Mot. to Enforce Prelim. Inj., For Civil Contempt, and For Sanctions*, ECF No. 97.  This Court granted the motion.  *Mem. Opinion & Order*, ECF No. 99, at 1.  In its ruling, the Court stated that its previous order required Superintendent Frame to transfer Plaintiff from Mt. Olive, without regard to the mental hygiene process.  *Id.* at 11-15, 17-18.  The Court directed Plaintiff's counsel to file an affidavit detailing the amount Defendants should pay to Plaintiff for relevant costs.  *Id.* at 19, 22.  The Court also noted that Plaintiff may "seek compensation for his July suicide attempt."  *Id.* at 19.  Plaintiff thus seeks $100,000 for perceived harms related to his suicide attempt, $26,007.50 for attorney fees, and $355.24 in "costs."  ECF No. 105, at 5-6.

ARGUMENT

## I. Monetary Fines for the Suicide Attempt Amount to Criminal Contempt Sanctions requiring Criminal Process Protections.

The exercise of the contempt power "is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions."  *Cooke v. U.S.*, 267 U.S. 517, 539 (1925).  When a court uses its contempt power to impose sanctions in the form of monetary fines, they may be characterized as civil or criminal sanctions.  The distinction can be murky but is nonetheless important because a court owes full criminal process protections for criminal contempt sanctions including the right to a jury trial.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833, 838 (1994).

Whether a contempt sanction is civil or criminal is evaluated by its substance, regardless of its label.  *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).  A contempt sanction is civil when it is used to bring a party into compliance with court orders or to compensate

a complainant for actual losses sustained. *Id.*; *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) (compensation "must of course be based upon evidence of the complainant's actual loss, and his right . . . to the compensatory fine is dependent upon the outcome of the basic controversy."); *In re General Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) ("Generally, a compensatory sanction may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." (cleaned up)). The sanction is criminal if it seeks to vindicate the authority of the court and to deter future litigants' misconduct by punishing the party. *Cromer*, 390 F.3d at 821.

Disregarding labels, compensatory sanctions for the July suicide attempt cannot be characterized as being used to bring Superintendent Frame into compliance with court order or to compensate Plaintiff for actual losses sustained. Such sanctions are criminal contempt sanctions which require criminal procedural protection.

First, Superintendent Frame maintains that he complied with this Court's preliminary injunction order by applying to Commissioner Dove, as asserted in Defendants' previous filings. Defendants further complied with this Court's order by identifying, referring, and transferring Plaintiff to MCFP Springfield.

Regardless of the compliance disagreement, it's undisputed that Plaintiff's motion did not compel compliance and that any post-compliance award cannot be "intended to coerce [Defendants] into compliance." *Cromer*, 390 F.3d at 822 (cleaned up). MCFP Springfield was identified—and application to BOP was made—weeks prior to Plaintiff's motion being filed. Plaintiff was accepted to MCFP Springfield on July 22, before Plaintiff's motion was filed. Two days later, BOP notified Defendants of that acceptance—the same day Plaintiff filed his contempt

motion. Plaintiff's motion therefore did nothing to coerce compliance. And the transfer was scheduled in advance of the contempt hearing and this Court's contempt ruling. There's no dispute that Plaintiff was transferred on September 11. So a compensatory sanctions award at this stage would not be "conditioned on compliance with a court order"; it would be "to vindicate the authority of the court and to punish the actions of the alleged contemnor." *Cromer*, 390 F.3d at 822 (cleaned up).

Second, it's unclear what "actual losses" Plaintiff sustained from his July suicide attempt. He did not lose money or property. All medical care has been covered by the State. Any physical injury that Plaintiff caused himself has "healed" with exception only to unspecified "issues" in the genitalia area. ECF No. 105, at 3. Yet, Plaintiff asserts this claim without providing any "evidence." *United Mine Workers*, 330 U.S. at 304; *Bagwell*, 512 U.S. at 834.

In addition to the suicide attempt, Plaintiff asserts "unavailability of appropriate medical care," "conditions amounting to solitary confinement," and a "mental effect" as reasons for compensatory sanctions. ECF No. 105, at 5. But the Court did not invite Plaintiff to seek compensatory sanctions for these perceived harms. It invited Plaintiff to seek compensatory sanctions for the suicide attempt. This alone should preclude Plaintiff's overreaching requests.

Nevertheless, if the Court were to entertain these additional requests, it's still unclear how these accusations can be characterized as "actual losses," especially without any asserted evidence or relevant precedent. Plaintiff fails to identify in his request any specific failure by WVDCR to provide appropriate medical care. Yet, Plaintiff received and continued to receive medical care including housing in Mt. Olive's mental health unit, telepsych mental health treatments, medical attention immediately after his suicide attempt to bandage and secure him, heightened supervision following the event, and continual State medical care coverage until his transfer—to a higher level

of care. Plaintiff similarly fails to explain his conditions amounting to segregated confinement and a subsequent "mental effect."

All of Plaintiff's contentions are devoid of actual losses and are thus unnecessary, serving only to punish Superintendent Frame for his perceived contumacy. This arbitrary use of sanctions is in tension with the underlying purpose of the contempt power. *Bagwell*, 512 U.S. at 831 ("The traditional justification for the relative breadth of the contempt power has been necessity."). Such sanctions therefore require constitutionally mandated procedural protections including a trial by jury. *Id.* at 833 ("[C]riminal contempt sanctions are entitled to full criminal process."); *see also Ravago Ams. LLC v. Vinmar Int'l Ltd.*, 832 Fed. Appx. 249, 256-58 (5th Cir. 2020) (finding a $50,000 fine a criminal sanction requiring due process protections). Defendant Frame hasn't received those due process protections, so the requested sanction is inappropriate.

In sum, a $100,000 fine would be a criminal sanction that would not result in compliance with the alleged contumacy. The Court should deny the request.

## II.    Plaintiff's Requested Amount is Largely Prohibited, Excessive, and Unreasonable.

As Plaintiff concedes, "[t]here is little precedent on the appropriate damages for an ultimately unsuccessful suicide attempt." ECF No. 105, at 3. Indeed, Superintendent Frame cannot find, and Plaintiff has not cited, a single case where compensatory contempt sanctions were imposed for purported injuries sustained from an unsuccessful suicide attempt. There is no precedent for the award itself nor to guide the court's consideration of an adequate amount. This alone is enough to deny Plaintiff's request for compensatory sanctions related to his suicide attempt.

a. *The $100,000 Amount is Prohibited.*

Plaintiff's compensatory sanction request is simply an Eighth Amendment claim dressed in alternate garb. *See* ECF No. 105, at 5 (requesting sanctions for Plaintiff's suicide attempt, "unavailability of appropriate medical care," "conditions amounting to solitary confinement," and a "mental effect"); *Second Am. Compl.*, ECF No. 67, at 13-14 (claiming deliberate indifference to serious medical need and asserting the same grounds for relief); *Bragado v. City of Zion/Police Dept.*, 839 F. Supp. 551 (N.D. Ill. 1993) (Plaintiff's cited § 1983 suit for wrongful death after the state failed to monitor a suicidal prisoner). Plaintiff asks the Court to forgo the usual pleading, discovery, motions practice, and trial required to obtain compensatory damages. The Court should decline that invitation.

Contempt sanctions are not an adequate replacement for a full Section 1983 adjudication. Section 1983 actions require different and additional considerations, such as immunity, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63-66, 71 (1989) (discussing immunity issues in the § 1983 context), and differing elements and standards of proof, *compare Buffington v. Baltimore Cnty, Md.*, 913 F.2d 113, 134-35 (1990) (requiring proof beyond a reasonable doubt for criminal contempt), *with Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (requiring clear and convincing evidence of the elements of civil contempt), *and Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (an Eighth Amendment violation requires deliberate indifference to medical needs). It is therefore inappropriate to impose contempt sanctions in lieu of a Section 1983 action. *Cf. Scott v. Clarke*, 355 F. Supp. 3d 472, 493 (W.D. Va. 2019) (court could not enforce a settlement agreement through contempt sanctions); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (5th Cir. 2006) (plaintiff could not recharacterize its case to justify punitive damages where the statute did not authorize them).

Such an end run around the civil litigation process allows Plaintiff to obtain compensatory sanctions for intangible harms where compensatory damages are unavailable—or at least require jury determinations not present here.  Assuming compensatory *sanctions* are analogous to compensatory *damages*, the Prison Litigation Reform Act bars compensatory damage awards for mental and emotional harms without a prior, more-than-*de-minimus* physical injury.  *See, e.g.*, *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002); *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002); *Doe v. Delie*, 257 F.3d 309, 314 n.3 (3d Cir. 2001); *Searles v. Van Bebber*, 251 F.3d 869, 881 (10th Cir. 2001).  And an attempted suicide, standing alone, does not constitute a physical injury.  *See, e.g.*, *Dipietro v. Barron*, No. 4:18-CV-00179-CDL-MSH, 2019 WL 11879042, at *17 (M.D. Ga. Nov. 14, 2019) (plaintiff's request for $100,000 in compensatory damages for alleged harms pursuant to a suicide attempt were barred under the PLRA because plaintiff lacked physical injury) *adopted in relevant part by* 2020 WL 8969969 (M.D. Ga. Jan. 3, 2020); *Morrill v. Holmes Cnty. Jail*, No. 5:15-cv-324-WTH-GRJ, 2018 WL 7082149, at *9-10 (N.D. Fla. Jan. 30, 2018) (same, collecting cases) *adopted by* 2019 WL 280082 (N.D. Fl. Jan. 22, 2019).  Courts have also refused to recognize self-inflicted harms as "injuries" for PLRA purposes for two reasons: (1) they aren't "at the hands of Defendants," *Steyer v. Rogers*, No. 07–3350(DRD), 2008 WL 508596, at *4 (D.N.J. Feb. 21, 2008), and (2) "allowing a self-inflicted injury to satisfy the physical injury requirement … would create a perverse incentive of self harm in prison populations," *Argetsinger v. Ritter*, No. 08–cv–01990–PAB–KMT, 2009 WL 3201088, at *4 (D. Colo. Sept. 29, 2009).  *See also Matagrano v. New York State Dep't of Corr.*, No. 98 CIV. 428(AKH), 1999 WL 675974, at *2 (S.D.N.Y. Aug. 31, 1999) (finding that inmate failed to demonstrate that he suffered any physical injury—other than self-inflicted injuries—caused by defendants); *Beau v. Watson*, No. 7:09-cv-00232, 2009 WL

1764834, at *2 (W.D. Va. June 22, 2009) ("[A]n inmate cannot create the imminent danger so as to escape the three strikes provision of the PLRA. To allow inmates to allege future infliction of self-harm to bypass § 1915(g) would eviscerate Congress' intent to limit the frequency of inmates' frivolous suits."); *Wallace v. Cockrell*, No. 3:02-CV-1807-M, 2003 WL 21418639 (N.D. Tex. Mar. 10, 2003) (prisoner's threat of self-inflicted injury was insufficient to show he was in imminent danger of serious physical injury for purposes of the PLRA's "three-strikes" provision because allowing a prisoner to create the imminent danger by self-inflicting serious physical injury would eviscerate the "three-strikes" rule).

So, in a Section 1983 context, Plaintiff would have to prove something more than negligence (to overcome qualified immunity), that he suffered physical injuries caused by Defendant Frame (beyond self-inflicted wounds), that his actions were a suicide attempt, that the alleged suicide attempt was caused by Defendant Frame, and that he has suffered mental and emotional harm from the suicide attempt. Meeting that burden requires several jury determinations. The Court should therefore deny Plaintiff's impermissible request for a Section 1983 award without a Section 1983 process.

### b. *$100,000 is Otherwise Excessive.*

Where compensatory *damages* (as opposed to sanctions) have been appropriate in cases with more egregious circumstances than alleged here, district courts have awarded much less than $100,000. *See Jones v. Thompson*, 818 F. Supp. 1263, 1268 (S.D. Ind. 1993) (awarding compensatory damages of $5,000 where law enforcement defendants used a three-way restraint on plaintiff following a suicide attempt, coupled with no medical review, no treatment, and denying basic amenities like personal hygiene and toilet usage); *Whisnant v. Hill*, No. 5:17-CT-03047-BO, 2020 WL 1901085, at *8 (E.D.N.C. Jan. 17, 2020) *adopted by* 2020 WL 917253

(E.D.N.C. Feb. 26, 2020, at *2 (awarding $15,250 in compensatory damages after plaintiff was attacked by correctional officers while recovering from a suicide attempt). Thus, $100,000 is out of proportion to Plaintiff's claims. *Spallone v. U.S.*, 493 U.S. 265, 276 ("[I]n selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed." (cleaned up)).

Plaintiff's alleged intangible harms aren't "actual losses." And intangible harms are "perhaps the most difficult damages to quantify." *See Hicks v. Ferreyra*, 582 F. Supp. 3d 269, 294 (D. Md. 2022) *affirmed on other grounds by Hicks v. Ferreyra*, 64 F.4th 156, 177 (4th Cir. 2023); *see also Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251 (4th Cir. 1996) ("[C]ase law reveals that courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony."). Compensatory damages determinations require "elaborate and reliable factfinding," *Bagwell*, 512 U.S. at 834, which is a "quintessential responsibility of juries." *Jennings v. Yurkiw*, 18 F.4th 383, 390 (2d Cir. 2021).

Moreover, in every area Plaintiff characterizes as adjacent to this action, damages have almost always been decided by juries or through settlement. *See, e.g., Bragado*, 839 F. Supp. at 555 (jury verdict awarding damages); *Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 919-20 (7th Cir. 2004) (same); *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1054 (3d Cir. 1991) (same); *Hill v. Marshall*, 962 F.2d 1209, 1212 (6th Cir. 1992) (same); *see also Sinclair v. Union Cnty.*, No. 2:05-cv-55, (D. N.J. 2007) ECF No. 125 (case settled); *Estate of Enoch v. Tienor*, 570 F.3d 821, 822 (7th Cir. 2009) (same). That's important for two reasons. First, it shows that a compensatory sanctions award for intangible harm—as opposed to an "actual loss"—isn't appropriate. Second, it shows that the proper process is through a Section 1983 claim and litigation.

10

Plaintiff's two cited cases in which a district court determined and awarded compensatory *damages* are distinguishable. *Bias v. Woods*, 288 Fed. Appx. 158, 161 (5th Cir. 2008); *Muhammed v. U.S.*, 6 F. Supp. 2d 582 (N.D. Tex. 1998). Aside from being mere persuasive authority, these cases have nothing to do with contempt sanctions. Moreover, the cases are factually dissimilar. In *Bias*, the award was based on a prison psychiatrist's delayed medical care while plaintiff was in a comatose state following a suicide attempt. 288 Fed. Appx. at 161. And in *Muhammed*, the award followed prolonged pain and suffering caused by walking and climbing stairs in a federal facility – not a suicide attempt. 6 F. Supp. 2d at 584. WVDCR did not delay or withhold any medical care in relation to Plaintiff's suicide attempt.

So if the Court awards compensatory sanctions for Plaintiff's alleged intangible harms, Plaintiff's requested sanction of $100,000 is too high, not supported by the evidence, and not supported by precedent.

### c. Some of Plaintiff's Requested Attorney's Fees Are Unrelated.

While maintaining all objections to the Court's order, Defendant Frame does not dispute that attorney's fees are an appropriate civil contempt sanction. But Plaintiff's request goes beyond the contempt motion and hearing. Plaintiff asks for $2,802.50 in attorney's fees for the work of Ms. Milnes; however, the entirety of her work is unrelated to the contempt proceedings. Rather, her fees are "associated with drafting Plaintiff's motion to obtain records related to the civil commitment proceeding and motion to join Defendant Caruso as a party to this case." ECF No. 105-2.

Similarly, Plaintiff's requested fees for Ms. Nash include unrelated work: "$1,170.00 pertaining to Plaintiff's motion for joinder and to amend his Complaint; [and] $1,170.00 pertaining to Plaintiff's motion to facilitate release of records." ECF No. 105-3. Plaintiff also asks for

$1,620.00 in fees "pertaining to correspondence, meetings, and communications … relating to the aforementioned motions," which appear to include the contempt motion as well as unrelated motions. *Id.* This request is too vague.[1]

So if the Court is inclined to award Plaintiff attorney's fees, they should be limited to fees and costs incurred in the contempt process. That amount appears to be $19,600.24, pending clarification of Ms. Nash's communication-related fees.

### III.    The Court Should Stay Enforcement of Any Sanctions Pending Appeal.

In the event the Court decides to grant Plaintiff's request, Superintendent Frame asks the Court to stay enforcement until he has an opportunity to challenge the ruling on appeal.[2]

A stay pending appeal is appropriate when (1) the applicant has made a strong showing that they are likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) issuance of a stay will not substantially injure the other parties interested in the proceeding; and (4) the public interest favors a stay. *See Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (cleaned up). The first two factors are the most critical. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Superintendent Frame has made a strong showing of likely success on the merits in this and previous filings. Absent a stay, and assuming the Court imposes the full weight of Plaintiff's request, Defendant Frame will pay a burdensome monetary fine in excess of $125,000 with no guarantee of return if his appeal is successful. If a stay of enforcement is issued pending appeal,

---

[1] Defendant Frame does not seek to invade the attorney-client privilege and would accept as true, without objection as to specificity, a declaration from Ms. Nash stating which of the 12 time entries for communications, ECF No. 105-3, PageID #3921, are related to the contempt motion.

[2] If contempt is civil, a party must "await final judgment," *In re Bestwall, LLC*, 99 F.4th 679, 684 (4th Cir. 2024), in "the main action" to appeal, *Windsor Power House Coal Co. v. Dist. 6 United Mine Workers of Am.*, 530 F.2d 312, 316 (4th Cir. 1976). *See Consolidation Coal Co. v. Loc. 1702, United Mineworkers of Am.*, 683 F.2d 827, 831 (4th Cir. 1982) (stating that even once fines are determined, a party can appeal a civil contempt order when it appeals the underlying claim itself).

Plaintiff can still receive due sanctions awards at the appropriate time. The parties, the Court, and the public are well served by a stay because compensatory contempt sanctions have not been addressed in the suicide attempt context (or other intangible-harm contexts), so its decision on the issue will give an authoritative anchor to the sanctions' propriety, process due, and appropriate amount, if any exists. The public interest is also served by saving the expenditure of taxpayer dollars from novel awards until their propriety is fully considered on appeal.

Alternatively, Superintendent Frame requests that any order awarding Plaintiff sanctions require Plaintiff's counsel to hold the full amount of the award in their trust account pending appeal.

## CONCLUSION

Superintendent Frame respectfully requests that the Court DENY Plaintiff's request for compensatory civil contempt sanctions.

Respectfully submitted,

JOHN B. MCCUSKEY
ATTORNEY GENERAL

*/s/Anthony D. Eates II*
Anthony D. Eates II
  *Deputy Attorney General*

State Capitol Complex
Bldg. 6, Suite 402
1900 Kanawha Blvd. East
Charleston, WV 25305
(304) 558-8989
Anthony.d.eates@wvago.gov

*Counsel for Superintendent Jonathan Frame*

Dated: October 8, 2025